# Exhibit 1

## IN THE CIRCUIT COURT FOR MONTGOMERY COUNTY, MARYLAND

**LELA WHITE**  :
19569 Ridge Heights Drive  :
Gaithersburg, MD 20879  :
 :
And,  :
 :
**SAMUEL WHITE**  :
19569 Ridge Heights Drive  :
Gaithersburg, MD 20879  :
 :
    Plaintiffs,  :
 :
    v.  : Case No.: 485706-V
 :
~~**CHRYSLER MOTORS CORPORATION**~~  :
~~341 Massachusetts Avenue~~  :
~~Highland Park, MI 48203~~  :
~~**Serve On**: The Corporation Trust~~  :
~~    32 South Street~~  :
~~    Baltimore, MD 21202~~  :
 :
**FCA US LLC**  :
**Serve On: The Corporation Trust Incorporated**  :
    **2405 York Road**  :
    **Suite 201**  :
    **Lutherville Timonium, MD 21093**  :
 :
    **And**  :
 :
    **The Corporation Company**  :
    **229 Brookwood Drive**  :
    **Suite 14**  :
    **South Lyon, MI 48178**  :
 :
    **And**  :
 :
    **1000 Chrysler Drive**  :
    **Auburn Hills, MI 48326**  :
 :
    Defendant.  :
 :

1

**FIRST AMENDED COMPLAINT**

COME NOW the Plaintiffs, Lela White and Samuel White, by and through their attorneys, Stuart L. Plotnick, Esq. and Jonathan E. Halperin, Esq., and hereby file this **First Amended** Complaint for damages against the Defendant, ~~Chrysler Motors Corporation~~, **FCA US LLC**, and in support thereof, state as follows:

I. PREAMBLE AND FACTS

**1.      This Amended Complaint is filed pursuant to Md. Rule 2-341(a), which permits a party to file an amendment to a pleading without leave of court by the date set forth in a scheduling order or, if there is no scheduling order, no later than 30 days before trial.  Plaintiffs file this First Amended Complaint within both deadlines.[1]   In addition, Md. Rule 2-341(c)(4) permits an amendment to correct misnomer of a party.**

2.      Jurisdiction is proper pursuant to Md. Code, Courts & Jud. Proc.§§6-102 and 6-103, as the subject incident occurred in Montgomery County, Maryland.

3.      Venue is proper pursuant to Md. Code, Courts & Jud. Proc. §§ 6-201 and 6-202(8), as the subject incident occurred in Montgomery County, Maryland.

4.      At all times pertinent to the Complaint, Plaintiffs Lela White ("Lela") and her husband Samuel White ("Samuel") was and remain residents of Montgomery County, Maryland, residing at the address in the caption of this Complaint.

5.      At all times pertinent to this Complaint, Defendant ~~Chrysler Motors Corporation ("Chrysler")~~ **FCA US LLC ("FCA")** is and remains a business engaged in the design, manufacture, and sale of automobiles, incorporated under the laws of ~~Michigan~~ **Delaware** and

---

[1]     **Moreover, no defendant has filed an Answer as of this filing.**

2

registered to conduct business in the state of Maryland, and regularly conduct business in Montgomery County, Maryland.

6. At all times pertinent to this Complaint, ~~Chrysler~~ **FCA** was and remains a seller and distributer of automobiles including minivans in Maryland through various dealerships and resellers.

7. On or about December 16, 2017, the Plaintiffs purchased a 2017 Chrysler Pacifica ("Pacifica") minivan from Ourisman Dodge, Inc. t/a Ourisman Chrysler Jeep Dodge of Alexandria, in Alexandria, Virginia, manufactured by ~~Chrysler~~ **FCA**.

8. At the time of said purchase, the Pacifica was being advertised as a family minivan with an emphasis on safety and security features. The van particularly takes families with small children into mind as potential consumers.

9. The Plaintiffs purchased the Pacifica for the purpose of safely loading and unloading their family, including their small children, and transporting same to various locations.

10. On May 16, 2018, Lela was loading her children into the Pacifica through the sliding automatic passenger door.  At this time, Lela was also approximately 31 weeks pregnant with twins. While Lela was loading her children into the Pacifica, Lela's youngest son, who was already seated in the back seat, pressed the button that triggers the door, causing the door to close on Lela's abdomen.

11. Even though Lela tried to push back, the door continued closing in on her abdomen with significant force, at  the location of her pregnancy.  Lela tried to block the door, but the force was too strong and the door would neither retract, nor allow her to extricate herself.

3

12. The forced closure of the Pacifica door caused immediate trauma to Lela's lower abdomen and disrupted her pregnancy.

13. Because Lela was pregnant and in excruciating pain, an ambulance was immediately called to the location of the incident and transported Lela to the emergency department in birthing distress.

14. Lela arrived at the emergency department with complaints of cramping, contractions, and lower back pain as a result of her abdomen being compressed by the Pacifica door.

15. In the emergency department, Lela was found to be 1cm dilated, 25% effaced with contractions every 2-3 minutes. She was subsequently admitted to the hospital for monitoring. Due to continued periods of regular contractions, worsening abdominal pain, down-trending labs, and suspected placental abruption, Lela underwent an emergency transverse cesarean section later that day.

16. Following her transverse cesarean ("c-section"), Lela experienced swelling of her lower extremities, required intravenous pain medication, and a "foley" catheter. She suffered significant blood loss and became anemic following the surgery. Lela was discharged on May 21, 2018 after spending five days in the hospital.

17. Lela's emergency c-section has created an increased risk of placental abruptions with any future pregnancies.

18. As a result of Lela's unplanned and early delivery, her twins, Isabella and Guinevere, were born prematurely, weighing 2lb 12.8oz and 3lb 0.75oz, respectively.

19. As a result of Lela's forced and premature delivery, the twins both required advanced resuscitation measures, and suffered from a multitude of medical issues due to their

underdeveloped organs, which required them both to remain in the Neonatal Intensive Care Unit for almost 6 weeks.

20. Guinevere and Isabella also suffered and continue to suffer from medical and developmental issues as a result of the in-utero trauma sustained from the Pacifica door, and the premature delivery that it caused.

21. Guinevere and Isabella's aforementioned medical issues required frequent hospital and doctor visits for a period of at least one year following their birth, and will likely require future monitoring and treatment.

22. As a result of their premature birth, the twins are at a greater risk of long-term complications such as learning disabilities, developmental delays, vision problems, hearing problems, dental problems as well as and behavioral and psychological problems, among others. It is premature to evaluate the nature and extent of any such deficits at this time, due to the twins' premature stage of development.

23. As a result of the incident, the Plaintiffs were forced to incur medical costs for Lela's medical treatment and the medical treatment of Guinevere and Isabella.

24. As a result of the aforementioned injuries, Lela and her twins received medical and hospital care and treatment furnished by the United States of America. The Plaintiffs, for the sole use and benefit of the United States of America under the provisions of 42 U.S.C. §§2651-2653, and with its express consent, assert a claim for the reasonable value of said care and treatment.

25. As a result of the incident, Lela suffered and continues to suffer severe anxiety and emotional distress from being injured by her minivan door; undergoing a traumatic and unexpected c-section; regular trips to the hospital and medical providers to address and treat

illnesses that resulted from the twins' traumatic and premature birth; and the fear and worry regarding the fate of her premature twins, whose health and development has been impacted as a result of this incident.

26. Prior to this incident, Lela had planned to deliver the twins at home with a midwife, which is how she delivered each of her four other children without any complications.

27. Following Lela's discharge from the hospital, the Plaintiffs took the Pacifica to a designated ~~Chrysler~~ **FCA** Dealership and Service Center to have the subject door inspected and repaired. Said dealership advised the Plaintiffs that the sliding door sensitivity "may have been malfunctioning," but they were not able to calibrate or adjust the door module sensitivity or the force with which it closes.

28. The Pacifica's automatic sliding door should have had a sensor which effectively limited the force to 30 pounds of force or less -a proper retraction and/or entrapment mechanism that prevents it from closing on objects and people in its path.

29. From the date the Plaintiffs purchased the Pacifica through the date of the incident, they never altered the Pacifica and same was serviced within ~~Chrysler's~~ **FCA's** recommendations.

30. At the time of the incident, the Pacifica was under manufacturer's and/or dealer's warranties, which were in full force and effect, and covered the portion(s) of the Pacifica which were defective and caused the above-mentioned injuries and damages.

## COUNT I
## NEGLIGENCE

31. Plaintiffs repeat, re-allege and incorporate herein by reference those facts and allegations contained in the previous paragraphs above, and further state:

32. At all times relevant to this action, ~~Chrysler~~ **FCA** had a duty to exercise reasonable care, and to comply with the existing standards of care in its preparation, design, research, development, manufacture, inspection, marketing, and promotion and sale of the Pacifica, which ~~Chrysler~~ **FCA** introduced into the stream of commerce, including a duty to ensure that consumers would not be exposed to unreasonable or dangerous safety hazards.

33. At all times relevant to this action, ~~Chrysler~~ **FCA** had a duty to warn all retailers and consumers of the potential safety risks and/or dangers associated with the Pacifica, including its automatic sliding doors.

34. At all times relevant to this action, ~~Chrysler~~ **FCA** knew or reasonably should have known that there were issues with the Pacifica's automatic sliding door, unbeknownst to the Plaintiffs and other consumers at the time of the incident, as consumers were complaining about the functions of the automatic sliding doors to ~~Chrysler~~ **FCA** and/or its auto retailers.

35. Additionally, ~~Chrysler's~~ **FCA's** use of "pinch" or "touch" sensors at the loading edge of the automatic sliding door would have prevented the door from continuing its closing cycle on objects or people in its path and would have caused the door to retract instead.

36. ~~Chrysler~~ **FCA** was aware of the significance of the aforementioned sensors, as ~~Chrysler~~ **FCA** utilized such sensors on the Pacifica's rear liftgate, but not on the passenger sliding door which is where passengers enter and exit the vehicle.

37. Based on what ~~Chrysler~~ **FCA** knew or reasonably should have known as described above, ~~Chrysler~~ **FCA** deviated from principles of due care, deviated from the standard of care, and was otherwise negligent in one or more of the following:

    a. Failing to design a proper entrapment prevention system for the Pacifica's automatic sliding passenger door, which would cause the door

7

to retract from an object or person in its path, rather than forcefully continuing its closing cycle as it did in Lela's case;

b. Failing to manufacture a proper entrapment prevention system for the Pacifica's automatic sliding passenger door, which would cause the door to retract from an object or person in its path, rather than forcefully continuing its closing cycle as it did in Lela's case;

c. Failing to utilize an additional "pinch" or "touch" sensor on the loading edge of the sliding door that would have prevented the door from closing onto objects and/or people in its path, or limit its force, as it did with Lela, even though ~~Chrysler~~ **FCA** utilized such sensors for its rear liftgate; and,

d. Failing to warn consumers and/or retailers about known defects in the Pacifica's automatic sliding doors.

38. ~~Chrysler~~ **FCA** knew or reasonably should have known that an improper and/or defective entrapment prevention system could cause the automatic passenger door to strike or entrap someone and cause serious bodily injury.

39. As a direct and proximate result of ~~Chrysler's~~ **FCA's** breaches, the Pacifica door forcefully closed on Lela's abdomen, causing her physical injuries to include the emergency and premature c-section delivery of her twins and the complications they suffered, as well as her increased risk of placental abruptions with future pregnancies.

40. As a further direct and proximate result of ~~Chrysler's~~ **FCA's** breaches, the Plaintiffs were forced to incur costs for Lela's medical treatment and the treatment of their twin daughters, and are expected to incur additional costs for same in the future.

8

41. As a further direct and proximate result of ~~Chrysler's~~ **FCA's** breaches, Lela and has suffered and continues to suffer from pain, emotional distress, and mental anguish.

42. The incident was caused solely by ~~Chrysler's~~ **FCA's** negligence with no negligence or contributing acts or omissions on the part of the Plaintiffs.

**WHEREFORE,** Plaintiffs Lela White and Samuel White demand judgment in their favor and against the Defendant ~~Chrysler Motors Corporation~~ **FCA US LLC**, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), plus interest and costs, and for such other relief as this Court deems just and proper.

## COUNT II
## PRODUCTS LIABILITY-DEFECT IN DESIGN

43. Plaintiffs repeat, re-allege and incorporate herein by reference those facts and allegations contained in the previous paragraphs above, and further state:

44. ~~Chrysler~~ **FCA** placed the Pacifica into the stream of commerce for sale in a defective and unreasonably dangerous condition in that the design of its automatic sliding door did not contain a proper entrapment prevention system, which would have caused the automatic sliding door to retract from an object or person in its path, rather than forcefully continuing its closing cycle as it did in Lela's case.

45. ~~Chrysler's~~ **FCA's** Pacifica was also defective in that it failed to utilize an additional "pinch" or "touch" sensor on the loading edge of the sliding door, as other comparable minivan manufacturers did at the time, which is an economically feasible feature that would have prevented the door from closing onto objects and/or people in its path as it did with Lela.

46. The aforementioned sensors were utilized by ~~Chrysler~~ **FCA** on the Pacifica's rear liftgate, but not on the sliding door which is where people enter and exit the vehicle.

9

47. ~~Chrysler's~~ **FCA's** Pacifica was also defective in that the force the door would generate when it closed exceeded acceptable industry customs.

48. The Pacifica reached the Plaintiffs without any substantial change in its condition and was in that same condition at the time of the subject incident.

49. On the date of the incident, Lela was utilizing the Pacifica in a foreseeable manner.

50. The physical injuries to Lela, to include the emergency and premature c-section delivery of her twins and the complications they suffered, as well as her increased risk of placental abruptions with future pregnancies, occurred because of the defective design of the Pacifica's automatic sliding door, particularly its inadequate entrapment protection system and/or the lack of the aforementioned sensors on the loading edge of said door.

51. As an additional result of ~~Chrysler's~~ **FCA's** design defect and the physical injuries it caused, the Plaintiffs were forced to incur costs for Lela's medical treatment and the treatment of their twin daughters, and are expected to incur additional costs for same in the future.

52. As a result of ~~Chrysler's~~ **FCA's** design defect, and the physical injuries it caused, Lela has suffered and continues to suffer from pain, emotional distress, and mental anguish.

53. If the Pacifica's sliding door had not been defectively designed, Plaintiffs would not have sustained the damages complained of.

**WHEREFORE,** Plaintiffs Lela White and Samuel White demand judgment in their favor and against the Defendant ~~Chrysler Motors Corporation~~ **FCA US LLC**, in an

amount in excess of Seventy-Five Thousand Dollars ($75,000), plus interest and costs, and for such other relief as this Court deems just and proper.

## COUNT III
## PRODUCTS LIABILITY-DEFECT IN MANUFACTURE
(Lela White v. ~~Chrysler Motors Corporation~~ **FCA US LLC**)

54. Plaintiff repeats, re-alleges and incorporates herein by reference those facts and allegations contained in the previous paragraphs above, and further states:

55. ~~Chrysler~~ **FCA** placed the Pacifica into the stream of commerce for sale in a defective and unreasonably dangerous condition in that the Pacifica's automatic sliding door contained a latent manufacturing flaw with its entrapment prevention system, which caused the door to continue forcefully closing onto Lela's body, rather than retract when it made contact with her.

56. The Pacifica reached and was in use by Lela without any substantial change in its condition and was in that same condition at the time of the subject incident.

57. On the date of the incident, Lela was utilizing the Pacifica in a foreseeable manner.

58. The physical injuries to Lela, to include the emergency and premature c-section delivery of her twins and the complications they suffered, as well as her increased risk of placental abruptions with future pregnancies, occurred because of a defect in the manufacturing of the Pacifica's automatic sliding door, particularly its inadequate entrapment protection system.

59. As an additional result of ~~Chrysler's~~ **FCA's** manufacturing defect and the physical injuries it caused, Lela was forced to incur costs for her medical treatment and the treatment of her twin daughters and is expected to incur additional costs for same in the

future; and has suffered and continues to suffer from pain, emotional distress, and mental anguish.

60. If the Pacifica's sliding door had not been defectively manufactured, Lela would not have sustained the injuries and damages complained of.

**WHEREFORE**, Plaintiff Lela White demands judgment in her favor and against the Defendant ~~Chrysler Motors Corporation~~ **FCA US LLC**, in an amount in excess of Seventy-Five Thousand Dollars ($75,000), plus interest and costs, and for such other relief as this Court deems just and proper.

Respectfully Submitted,

*Stuart L. Plotnick, Esq.*
CPF# 8806010286
Law Offices of Stuart L. Plotnick, LLC
51 Monroe Street, #707
Rockville, MD 20850
301-251-1286 (t)
866-641-2386 (f)
StuartP@Plotnicklaw.com
*Attorney for the Plaintiffs*

And,

*Jonathan E. Halperin*
Jonathan E. Halperin, Esquire
CPF# 9206170128
~~5225 Hickory Park Drive, Suite B~~
~~Glen Allen, VA 23059~~
~~Ph: (804) 527-0100~~
~~Fax: (866) 335-1502~~
**4435 Waterfront Drive**
**Suite 100**
**Glen Allen, VA 23060**
**Ph: (804) 527-0100**
**Fax: (804) 597-0209**
Jonathan@hlc.law
*Attorney for the Plaintiffs*

## **JURY DEMAND**

Plaintiffs hereby request a trial by jury as to all issues triable herein.

_____
Stuart L. Plotnick, Esq.

*Jonathan E. Halperin*
Jonathan E. Halperin, Esq.

**CERTIFICATE OF SERVICE**

I, undersigned counsel, hereby certify that on the 25th day of October, 2021, I sent, via electronic mail and first-class U.S. mail, the foregoing First Amended Complaint, to the following attorneys:

Nicholas G. Even, Esq.
Bowman and Brooke, LLP
41000 Woodward Ave
Suite 200
Broomfield Hills, MI 48304
nicholas.even@bowmanandbrooke.com

Kevin J. Penhallegon, Esq.
Nelson Mullins
100 S. Charles Street
Suite 1600
Baltimore, MD 21201
kevin.penhallegon@nelsonmullins.com
*Counsel for Defendant*

_____
Stuart L. Plotnick, Esq.